(83 N. W. Rep. 221.)

---

ANDREWS & GAGE *vs.* THE STATE BANK OF WHEATLAND.

Opinion filed May 24, 1900.

### Banks—Deposit—Evidence—Loan.

The issuance of a deposit slip by a bank or the entry of a deposit in a pass book has only the effect of a receipt for money. While it raises a presumption that the deposit was made, yet it is open to parol explanation.

### Deposit to Another's Credit—Entry in Pass Book.

But where D. was indebted to A. & G., and applied to the bank for a credit for the amount for a few days, promising to then deposit to balance the credit, and such credit was given, the transaction amounted to a loan by the bank to D. of the amount; and where D.

took a deposit slip in the name of A. & G. for the amount, and also a pass book in their name, in which the deposit of the amount was entered, and delivered the same to A. & G. as payment of his debt, the legal effect was a deposit by A. & G. of the amount for which the credit was given, and the failure of D. to fulfill the promise upon which the credit was extended could not affect the legal rights of A. & G.

Appeal from District Court, Cass County; *Pollock, J.*

Action by A. C. Andrews and J. E. Gage against the State Bank of Wheatland. Judgment for plaintiffs. Defendant appeals. Affirmed.

*John E. Green,* for appellant.

*Ball, Watson & Maclay,* for respondents.

BARTHOLOMEW, C. J.   This action was brought to recover the amount of two deposits which plaintiffs allege were made to their credit in the defendant bank. The answer was a denial of the deposits. The case was tried to a jury, and a verdict directed for the plaintiffs for full amount claimed. Motion for new trial denied, and defendant appeals.

A number of errors are assigned upon the rulings of the court in excluding testimony offered by the defendant, but our application of the law to the conceded facts will show that the excluded testimony was entirely immaterial. The remaining assignments relate to the sufficiency of the admitted evidence to warrant the action of the court in directing a verdict for plaintiffs. They may be considered collectively. The following facts are undisputed: The plaintiffs are co-partners, with their business headquarters in Minneapolis. In 1898 and prior thereto they operated grain elevators in this state, one of which was situated at Wheatland, in Cass county. Prior to June 13, 1898, one Diemer had been the agent of plaintiffs in purchasing grain and conducting their business at Wheatland. One Cousins was plaintiffs' general agent in this state, with headquarters at Fargo. The defendant bank was doing business in Wheatland, and an account was kept in said bank in the name of the agent, Diemer, from which payments were made for the grain purchased by said agent at that point. The funds for this account were received by said bank through drafts made by Diemer upon the firm at Minneapolis, and through drafts sent direct by the firm, and through currency deposited by Mr. Diemer. This fund was paid out on the individual checks of Diemer. The firm paid the bank a small commission for paying out the money, but it is entirely clear that the account was the individual account of Diemer. On June 13, 1898, the general agent, Cousins, visited Wheatland for the purpose of closing Diemer's agency, as he (Diemer) wished to quit the service by reason of ill health. From the data then accessible, the general agent and Diemer reached the conclusion that Diemer owed the firm the sum of $456.39. Mr. Diemer then went to the residence of the cashier of the defendant bank,—the cashier not having gone to the bank that morning,—and informed him that he (Diemer) wanted

a credit at the bank for the sum of $456.39 for two days, stating that he expected a remittance by that time. The cashier (Mr. Mares) wrote a note to the bookkeeper (Miss Campbell), who acted as cashier in the absence of Mr. Mares, authorizing her to give Diemer credit for the sum of $456.39. This was done, and Mr. Diemer took the credit in the form of a deposit slip in the name of Andrews & Gage for the amount. The bookkeeper also gave him a pass book for Andrews & Gage, in which was entered on that date a deposit of $456.39. The deposit slip and the pass book were turned over by Diemer to the general agent. When this settlement was reported to plaintiffs they claimed that the settlement was incorrect, and that there was still $131.67 due from Mr. Diemer. On June 22d, nine days after the visit just mentioned, Mr. Cousins again went to Wheatland, and saw Mr. Diemer, and reported to him the statement of the firm. Dr. Diemer immediately said that he had already discovered the mistake, and that he would go over to the bank and deposit the amount. He at once went to the bank, and in a few minutes returned with a deposit slip, in plaintiffs' name, for the exact amount due, and turned it over to Mr. Cousins. There is a little uncertainty surrounding the issuance of this deposit slip. It is one of the forms used by the bank. It is dated June 13th, same date as the other slip, yet it could not have been delivered until June 22d. Mr. Mares testifies that he did not make it. The bookkeeper testifies that it is in Mr. Mares' handwriting. But this uncertainty is immaterial. Another agent had been installed in Diemer's place. The pass book that had been given to plaintiffs was in his possession. As soon as the second slip was received this agent took the pass book to the bank, and asked to have the deposit entered thereon. The bookkeeper took the book and passed into the back room, and, returning a moment later, made the entry showing a deposit of $131.67 on June 22, 1898. She testifies that the cashier informed her that this amount was to be turned over to plaintiffs. This transaction being in turn reported to plaintiffs, they drew their draft a few days later upon the defendant bank for the full amount of the two deposits. Payment of this draft was refused, except as to the sum of $111.98. The ground of this refusal was the fact that no deposit was made by Diemer as promised to balance the credit of $456.39 given on June 13th, and for which the first deposit slip was given and entered in the pass book, and at the time the second deposit slip was given and the entry made Diemer had in said bank the sum of $111.98, and no more.

Counsel for appellant urges that this refusal was justified, and that under these facts there is no liability on the part of the bank except for the sum of $111.98, which was tendered and refused. Counsel insists that the principles of estoppel cannot be applied to this case; that the facts do not create an estoppel. But we do not think any question of estoppel enters into this case. It is not a case where the truth need be suppressed. If the deposits were not, in legal contemplation, made, then plaintiffs cannot recover; if they

were so made, then they should recover. And, moreover, we agree with counsel that the issuance of a deposit slip or an entry of a deposit in the pass book has no other or greater force than a receipt for money, and is open to parol explanation. *Talcott* v. *Bank* (Kan. Sup.) 36 Pac. Rep. 1066. But we are clear that, in legal effect, the deposits were made by plaintiffs just as the entries show. We discuss the first deposit. Diemer told the cashier that he desired credit for the amount for a few days, and he would then deposit to balance. The cashier extended the credit. Without taking a note or any written evidence of indebtedness, he instructed his book-keeper to extend the credit, and it was done. The transaction was, in effect, a loan by the bank to Diemer of that much money. He could deal with it as he saw proper. He might have checked it out at once, and given the currency to Mr. Cousins. If, then, the latter had taken the currency back to the bank, and deposited it in the name of plaintiffs, and taken the deposit slip· and the pass book, the rights of the parties would have been exactly the same. Yet in the latter case there could be no claim that the money was not deposited. Instead of pursuing that course, Diemer pursued the· course that is adopted in the great mass of commercial transactions consummated through banks, and transferred the credit. Had there been no credit in fact given, and had Diemer received a deposit slip in his own name, and subsequently given plaintiffs a check for the amount with the deposit slip attached, then the case would come within *Bank* v. *Clark*, 134 N. Y. 368, 32 N. E. Rep. 38, cited by counsel, where the court declined to hold as matter of law that anything was transferred. But the difference in the facts is so radical that the case can have no controlling influence here. To say that nothing was deposited is to say that no credit was given. But the cashier testifies that the credit was given. The difficulty lies in the fact that the promise upon which the credit was given was not fulfilled. The logic of defendant's position is to force the plaintiffs to bear the loss of its bad debts. Of course, the fact that plaintiffs might recover the shortage in a direct action against Diemer, or might recover on Diemer's bond to plaintiffs, cannot change the legal rights of the parties to this action.

The same general principles must govern as to the second deposit. Diemer went to the bank, and returned with a deposit slip in plaintiffs' favor for the exact amount due. That amount was subsequently entered on plaintiffs' pass book. This raised a strong presumption that the deposit had been received. It was necessary for defendant to show that there had been a mistake somewhere. Nothing of the kind is pretended. True, they say Diemer had but $111.98 to his credit at the time. But it is not claimed that he gave a check even for that, or that the bank intended to limit his credit to the amount on deposit. The bookkeeper testifies that the cashier said that the sum of $131.67 was to be transferred to Andrews & Gage. By what arrangement Diemer secured this additional credit

is not disclosed, but that it was by some arrangement with the bank is too clear for question. We find no error, and the judgment of the District Court is affirmed. All concur.

WALLIN, J. I concur in the result announced in the majority opinion, but prefer to base my concurrence, under the facts recited, upon the ground that the defendant is estopped from denying liability to plaintiff.